USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 9-18-2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LERIO GUERRERO,

                 Petitioner,

-against-

JAMIE LaMANNA,

                 Respondent.

17-cv-1486 (JGK)

MEMORANUDM OPINION
AND ORDER

**JOHN G. KOELTL**, United States District Judge:

    The petitioner, Lerio Guerrero, brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner pleaded guilty on October 9, 2012, to an indictment in New York State Supreme Court, New York County, charging rape in the first degree, sodomy in the first degree, robbery in the first degree, burglary in the first degree, and attempted robbery in the first degree. The petitioner is currently incarcerated and is serving seven concurrent terms of fifteen years. The petitioner argues that his constitutional right to due process of law was violated as a result of his DNA indictment, an amendment to that indictment, and an allegedly delayed prosecution.

    For the reasons explained below, the petition for a writ of habeas corpus is **denied**.

1

I.

The following is a summary of the relevant facts. On November 8, 1998, a woman was attacked by a man as she was entering her apartment in the Lower East Side of Manhattan. Holding a piece of broken glass to the victim's throat, the man raped and sodomized her. State Court Record ("S.R.") at 200. He then stole her wallet, took her to an ATM and forced her to withdraw money. S.R. at 200. The victim escaped and was brought to a hospital, where a rape kit was prepared. S.R. at 200. The police recovered the attacker's blood from the victim's coat, as well as an impression left on the ATM receipt by the joint area of a right index finger. Six usable fingerprints were also recovered from the crime scene. S.R. at 201. The police were also able to isolate the attacker's DNA profile from the rape kit. S.R. at 202.

The New York City Police Department ("NYPD") conducted an extensive investigation into the incident in an attempt to find the attacker. S.R. at 201. However, the usable fingerprints yielded no match in the State ID system. Other avenues pursued by the police, such as canvassing the area, having the victim review mugshots, and distributing surveillance video to the public, were unsuccessful. S.R. at 201-202. The attacker was not found and the case was closed in July, 1999, when it was determined that all leads had been exhausted. S.R. at 202.

On April 13, 2005, a New York County grand jury, using the DNA profile obtained during the police investigation, charged the attacker by DNA indictment with rape in the first degree, two counts of sodomy in the first degree, burglary in the first degree, two counts of robbery in the first degree, and attempted robbery in the first degree. S.R. at 203.

In May 2011, while questioning the petitioner concerning an unrelated rape, investigators recovered his DNA from a cigarette he smoked during the interrogation and left in the police station. S.R. at 203. The DNA profile taken from the cigarette butt matched the DNA profile of the attacker who committed the 1998 rape. S.R. at 203. The finger joint impression taken from the crime scene was also matched to the petitioner. S.R. at 203.

On June 9, 2011, the 2005 indictment was amended to replace the identifying DNA profile with the petitioner's name. S.R. at 203-204. The petitioner was arrested on the amended indictment soon afterwards. S.R. at 9. On July 25, 2011, the petitioner filed a motion to dismiss the indictment on the grounds of insufficiency, improper amendment, and as a violation of the statute of limitations and the right to a speedy trial. S.R. at 60. On October 25, 2011, the motion was denied by the New York State Supreme Court. S.R. at 171. On October 9, 2012, the petitioner pleaded guilty to all counts of the indictment and executed a waiver of appellate rights. S.R. at 180-189. The

3

petitioner was sentenced on October 23, 2012 to seven concurrent terms of fifteen years of incarceration. S.R. at 35-36.

The petitioner appealed to the Appellate Division, First Department, claiming that the indictment and subsequent amendment violated several provisions of the State and Federal Constitutions and alleging several state statutory claims. People v. Guerrero, 3 N.Y.S.3d 600, 601 (App. Div.), aff'd, 65 N.E.3d 51 (N.Y. 2016). The Appellate Division affirmed the judgment of conviction. First, the court held that the speedy trial claims raised by the petitioner were meritless because the petitioner had not established prejudice, and the delay was explained by the people's practical inability to prosecute until the attacker's identity was known. Guerrero I, 3 N.Y.S.3d at 601. The court then held that the remainder of the petitioner's claims had been forfeited by his guilty plea and his waiver of the right to appeal. Id. Alternatively, the court held that the DNA indictment and its amendment were proper under state law, and that the remainder of the petitioner's claims failed on the merits. Id.

The petitioner was granted leave to appeal to the Court of Appeals. The Court of Appeals affirmed over a lone dissent, explaining that New York law provides that only those claims involving "jurisdictional defects" or "rights of a constitutional dimension that go to the very heart of the

4

process" may survive a guilty plea. People v. Guerrero, 65 N.E.3d 51, 56 (N.Y. 2016). The court found that, of the claims brought by the petitioner, only the constitutional speedy trial claim had survived his guilty plea, and affirmed the Appellate Division's ruling that that claim was meritless. Guerrero II, 65 N.E.3d at 56.

On February 28, 2017, the petitioner filed his petition for habeas corpus before this court, pursuant to 28 U.S.C. § 2254. While unclear from his petition, which does not set forth his claims distinctly, the petitioner appears to raise numerous claims regarding the original DNA indictment, the amendment of the indictment, the state statute of limitations, and the allegedly delayed prosecution. Habeas Pet. 5. Reading his petition in the light most favorable to his case, as the Court must for a pro se plaintiff, the petitioner alleges the following claims: (1) the John Doe indictment violated his state and federal constitutional rights to be charged by a grand jury, (2) the indictment was not supported by legally sufficient factual allegations, (3) the indictment was not supported by competent and admissible evidence, (4) the indictment was improperly amended, (5) the indictment did not give adequate notice of the charges, (6) the prosecution violated the state

5

statute of limitations, and (7) he was deprived of his right to a speedy trial.[1] Resp't Br. 9-10.

These claims can generally be categorized into three groups. First, the petitioner makes claims suggesting that the indictment process was deficient and that the statute of limitations was circumvented through the delayed process of amending the indictment (Claims 1-6). Second, the petitioner argues that the delay between the incident and the amendment of the indictment violated his speedy trial rights under the Fifth and Sixth Amendments (Claim 7). Lastly, Guerrero contends that his constitutional right to due process was violated by the cumulative effect of the errors made by the state trial court.

The Court will address each category of claims in turn.

**II.**

The respondent argues that the petitioner's claims relating to the Doe indictment and the statute of limitations must be dismissed.

---

[1] The respondent, in reading the petition and state court record generously, suggests that the petitioner raised an ex post facto claim that the prosecution used the wrong statute of limitations. Resp't Br., 10. Such a claim is not made on the face of the petition and is therefore not properly before this Court. To the extent that the petitioner attempted to raise such a claim, the Court of Appeals decided that the claim did not survive the petitioner's guilty plea and was not properly before the court. Guerrero II, 65 N.E.3d at 55 n.3. This was an independent and adequate state law ground for rejecting the claim.

6

# A.

First, the respondent argues that the petitioner's claims relating to the indictment and state statute of limitations are not cognizable under federal habeas relief because the state court rejected those claims on an independent and adequate state ground.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 729-730. In order to satisfy the test for an independent and adequate state law ground, the state law rule must be "a 'firmly established and regularly followed state practice'" at the time at which it is to be applied. Ford v. Georgia, 498 U.S. 411, 423-424 (1991) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

New York state courts have long held that a defendant who pleads guilty forfeits all claims relating to deprivations of rights from before the plea was entered, other than those that are either "jurisdictional" or of a "constitutional dimension that go to the very heart of the process (such as the

7

constitutional speedy trial right, the protection against double jeopardy or a defendant's competency to stand trial)." People v. Hanson, 738 N.E.2d 773, 776 (N.Y. 2000); see also Guerrero II, 65 N.E.3d at 56; People v. Taylor, 478 N.E.2d 755, 758 (N.Y. 1982). With respect to challenges to indictments, an indictment is "jurisdictionally defective only if it does not effectively charge the defendant with the commission of a particular crime." People v. Iannone, 384 N.E.2d 656, 664 (N.Y. 1978); see generally People v. Swartz, 520 N.Y.S.2d 224, 225 (App. Div. 1987) (citing People v. Case, 365 N.E.2d 872, 874 (N.Y. 1977)). With respect to claims alleging violations of the statute of limitations, the New York courts have held that "[t]he statute of limitations under CPL 30.10 is not a jurisdictional matter, nor is it a right of constitutional dimension," and therefore such claims do not survive a guilty plea. People v. Parilla, 870 N.E.2d 142, 145 (N.Y. 2007); see also People v. Oliver, 988 N.Y.S.2d 400, 401 (App. Div. 2014).

Relying on this firmly established precedent, the Court of Appeals held that the petitioner waived his claims regarding the indictment and statute of limitations by pleading guilty and executing a waiver of appellate rights. Guerrero II, 65 N.E.3d at 56-57. The court found that the petitioner had forfeited his hearsay challenges to the amendment of the indictment by pleading guilty, and that the petitioner's arguments relating to

the legal sufficiency and subsequent amendment of the indictment were non-jurisdictional by nature. Id. at 57. The court also found that the petitioner did not raise the claim that the indictment failed to charge the commission of a crime. Id. at 55. The state court relied on an independent and adequate state law ground in denying the petitioner's indictment and statute of limitations related claims.

There are two limited exceptions to the independent and adequate state law doctrine that can prevent the claims from being defaulted. Neither exception applies here. First, if the failure to consider the claim will result in a fundamental miscarriage of justice, then the Court can review the state court judgment. Harris v. Reed, 489 U.S. 255, 262 (1989). But the petitioner's guilty plea forecloses an argument that he is actually innocent and thus his imprisonment results in a fundamental miscarriage of justice. Second, a federal court may review the defaulted claim if "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Here, the petitioner forfeited his claims by pleading guilty. A voluntary guilty plea cannot be characterized as an external factor which prevented compliance with the state law rule. To the contrary, it was the defendant's voluntary decision that

subjected him to the rule. There is no contention that the guilty plea was involuntary.

Therefore, the state court dismissed the petitioner's claims relating to the indictment and the statute of limitations on an independent and adequate state law ground. This Court is thus barred from granting federal habeas relief because the petitioner failed to meet a state procedural requirement.

**B.**

The respondent argues, in the alternative, that the petitioner's indictment and statute of limitations related claims are unreviewable by this Court because they are claims brought under state law.

The role of federal courts reviewing habeas petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims. Their purpose instead is to review whether the circumstances surrounding the petitioner's detention "violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution." Townsend v. Sain, 372 U.S. 293, 311-312 (1963). Habeas petitions may not simply repackage state law claims, which have previously

been found to be meritless, in order to obtain review. DiGuglielmo v. Smith, 366 F.3d 130, 136 (2d Cir. 2004).

In this case, the indictment and statute of limitations related claims allege violations of the state law constitution and state statutes. On direct appeal, the defendant relied on a provision of the New York State Constitution as well as various state statutes to set forth his claims regarding his indictment and the statute of limitations. See S.R. at 441-451 (citing N.Y.S. Constitution Art. I § 5 (indictment by grand jury); CPL § 190.65(1) (sufficiency of indictments); CPL § 200.70(2)(b) (amendments to indictments); CPL § 30.10 (statute of limitations)).

Thus, these claims sought to vindicate rights which exist under New York State's Constitution and statutes. See DiGuglielmo, 366 F.3d at 136-137 (holding that a decision that a jury charge complied with state law was not subject to federal habeas review); McDaniel v. LaValley, No. 11cv46, 2011 WL 5865080, at *6 (S.D.N.Y. Nov. 22, 2011) (finding claims arising out of state law to be non-reviewable unless they are a deprivation of federal constitutional rights). The merits of these state law claims were rejected by the Appellate Division. Guerrero I, 3 N.Y.S.3d at 601. Therefore, these state law claims are not cognizable on a federal habeas petition.

## C.

Lastly, the respondents argue that, even if the state law claims were cognizable in a federal habeas petition, they would, in any event, be barred under federal law by the petitioner's guilty plea.

The Supreme Court ruled in Tollett v. Henderson, 411 U.S. 258, 267 (1973), that a petitioner may not raise independent claims relating to the deprivation of constitutional rights that occurred prior to entering a guilty plea. A defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional] standards." Id. Therefore, the technical claims surrounding the indictment would fail as federal claims, even if they were cognizable, beacause the indictment was filed and amended before the guilty plea was entered.[2]

## III.

Next, the petitioner claims that the delayed prosecution in this case violated his right to a speedy trial under the Fifth and Sixth Amendments to the United States Constitution. The claim is that the cumulative delay of almost thirteen years

---

[2] Alleged defects in the indictment would also not be cognizable on a petition for habeas corpus because there is no federal constitutional right to an indictment in a state court criminal case. See U.S. ex rel. Curtis v. Warden of Green Haven Prison, 463 F.2d 84, 87 (2d Cir. 1972) (citing Hurtado v. California, 110 U.S. 516 (1884)); see also Aponte v. Edward, No. 99cv4517, 2000 WL 10217, at *3 (S.D.N.Y. Jan. 5, 2000).

12

between the November 8, 1998 assault and the amendment of the indictment on June 9, 2011 violated his speedy trial rights under the Constitution. The respondent argues that the New York State courts reasonably denied this claim on the merits, and the pre-trial delay did not violate the petitioner's rights under the Constitution due to the nature of the delay, and lack of prejudice to the petitioner.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir.2006); see also Brown v. Woods, No. 07cv10391, 2010 WL 2605744, at *2 (S.D.N.Y. June 29, 2010).

### A.

The delay between the date of the crime (November 8, 1998) and the date of the DNA indictment (April 13, 2005) implicates the petitioner's Fifth Amendment rights. S.R. at 7, 9. A federal constitutional right to a speedy trial exists in some limited

13

circumstances under the Due Process Clause of the Fifth Amendment. United States v. Lovasco, 431 U.S. 783, 789 (1977); see also United States v. Marion, 404 U.S. 307, 324 (1971). When considering the petitioner's Fifth Amendment due process claim resulting from pre-indictment delay, the Court must consider "the reasons for the delay as well as the prejudice to the accused." Lovasco, 431 U.S. at 790. Generally, proof of prejudice is a necessary, but not sufficient, element of this sort of due process claim. Id. at 790.

The state courts reasonably applied this law when they found that the petitioner was unable to establish prejudice in this case. Guerrero II, 65 N.E.3d at 56; Guerrero I, 3 N.Y.S.3d at 601. It is clear that the pre-indictment delay had no adverse impact on the petitioner. The overwhelming evidence based on the petitioner's DNA was conclusive, and there is no indication that the defense would have been at all impaired had the petitioner been identified and tried earlier. Considering the weight of the DNA evidence, as well as the petitioner's guilty plea, it cannot be shown that his defense was undermined in any way by the delay. The result of the trial would have been the same were the petitioner to have been indicted and tried immediately after the offenses were committed. Additionally, there is no indication that any defenses that could have been raised at trial by the petitioner were unavailable to him because of the delay. The

14

petitioner does not point to any evidence that would have been stronger for his case if he had gone to trial earlier.

Accordingly, the state courts applied federal law reasonably in ruling that the petitioner's Fifth Amendment due process rights were not impaired by the pre-indictment delay, because the defendant suffered no prejudice from the delay.

**B.**

The six-year delay between the date of the original indictment (April 13, 2005) and the date of the amendment of the indictment naming the petitioner (June 9, 2011) implicates the petitioner's Sixth Amendment right to a speedy trial. S.R. at 9. Federal law states, "Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, . . . no Sixth Amendment right to a speedy trial arises until charges are pending." United States v. MacDonald, 456 U.S. 1, 7 (1982) (citation omitted). As with the Fifth Amendment claim, the respondent argues that this Court must defer to the state court's determination because it was a reasonable application of federal law.

The Supreme Court set forth the test for determining when a Sixth Amendment right has been violated in Barker v. Wingo, 407 U.S. 514, 530 (1972). In applying this test, the Court must weigh the following factors: the length of the delay, the reason

15

for the delay, the petitioner's assertion of his right, and prejudice to the petitioner. Id. at 530.

The state courts applied federal law reasonably in ruling that the petitioner's speedy trial rights under the Sixth Amendment were not impaired by the delay between indictment and arrest. Guerrero II, 65 N.E.3d at 57; Guerrero I, 3 N.Y.S.3d at 601. The Appellate Division noted that the defendant had not presented any evidence of prejudice -- one of the essential Barker factors. Id.[3] This decision was neither contrary to, nor an unreasonable application of, federal law. 28 U.S.C. § 2254(d)(1); see Williams v. Taylor, 529 U.S. 362, 404-405 (2000).

While the state courts did not address the other Barker factors, an analysis of all of the factors confirms that the state courts' decision to deny relief was reasonable. In this case, the length of the delay -- six years -- weighs in favor of the petitioner. However, the length of the delay is primarily a triggering mechanism, and is not dispositive of the merits of the claim. Barker, 407 U.S. at 530-531. The second factor, reason for delay, is "closely related" to the length of the delay. The Supreme Court, in recognizing this test, also stated that "a valid reason . . . should serve to justify appropriate

---

[3] While the state courts' analyses of this claim was brief, this Court must assume that the state court considered all of the arguments and decided the federal claim on the merits. Harrington v. Richter, 562 U.S. 86, 99 (2011).

16

delay." Id. at 531. In this case, there was a plainly valid reason for the six-year delay: the petitioner had not been matched to his DNA profile in the indictment. As the Appellate Division explained, the prosecution lacked the "practical []ability to prosecute defendant until they obtained his DNA sample from another arrest." Guerrero I, 3 N.Y.S.3d at 601. Thus, the second Barker factor weighs against the petitioner. The third factor, the petitioner's assertion of his rights, weighs in favor of the petitioner because he immediately asserted his speedy trial rights after his 2011 arrest.

Prejudice to the petitioner is the fourth Barker factor, and it weighs heavily against him. There has been no prejudice shown in this case and the record shows no attempt to demonstrate prejudice. In assessing prejudice, Barker lays out three interests of the defendant to consider: (i) "prevent[ing] oppressive pretrial incarceration," (ii) "minimiz[ing] anxiety and concern of the accused," and (iii) "limit[ing] the possibility that the defense will be impaired." Id. at 532. During the six-year period between the initial indictment and the amendment of the indictment, the petitioner was not incarcerated, and therefore was also not subjected to any anxiety or concern as an accused -- because he had not yet been accused. Further, due to the nature, and conclusiveness, of the DNA evidence, the defense was not impaired by the delay. In

17

fact, there is no indication that the trial would have proceeded any differently if it had proceeded in 2005. Considering the Barker factors, it is plain that the delay between the filing of the original indictment and the trial was not a violation of the petitioner's rights under the Sixth Amendment. The accused did not want a trial -- and he benefitted from the delay by continuing to remain free for more than twelve years.

### IV.

Although not clear from his papers, the petitioner also apparently argues that the cumulative effect of many trial-court errors deprived him of due process of law.

However, the state courts found not only that these claims were waived by the guilty plea, but also that the underlying indictment, and its subsequent amendment, were valid. There is no indication that there were any cognizable state law errors which cumulatively denied the petitioner due process. Objections to the legal sufficiency of the indictment and its amendment were waived under state law. Guerrero II, 65 N.E.3d at 57. As discussed above, the courts of the State of New York have found that, as a matter of state law, the petitioner's guilty plea barred each of the indictment and statute of limitations related claims. These claims made up the majority of the petitioner's cumulative due process violation claim -- and it is plain these claims are not meritorious. Therefore, the petitioner is not

18

left with any substantial number of alleged trial-court errors on which he can rely to make a "cumulative" argument. Thus, there are no cognizable errors that accumulated to deny the petitioner due process of law.

## CONCLUSION

For the reasons explained above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied.** Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to enter judgment dismissing the petition and closing this case.

**SO ORDERED.**

**Dated:**    **New York, New York**
             **September 18, 2018**

                                            John G. Koeltl
                                    United States District Judge